JIMERSON v. REED.

4-6353                                      150 S. W. 2d 747

Opinion delivered May 12, 1941.

*S. S. Jefferies,* for appellant.

*Joe H. Schneider* and *Wm. J. Kirby,* for appellee.

SMITH, J. James Keith executed a mortgage dated March 4, 1931, conveying an 80-acre tract of land to Sam E. Montgomery, to secure an indebtedness of $500, which was evidenced by two notes, each for $250, one due March 4, 1932, the other March 4, 1933. The mortgage was filed for record on the date of its execution. No notation of any payment on these notes was ever entered on the margin of the mortgage record, but a cash payment of $7.50 was made on September 9, 1934.

Keith failed to pay taxes for the year 1931, and the land forfeited to the state for the nonpayment thereof, and on March 30, 1936, Jimerson purchased the land from the state and received a deed from the State Land Commissioner. After obtaining this deed from the state, Jimerson, on April 10, 1937, obtained a quitclaim deed from Keith. At that time the mortgage from Keith to Montgomery was in full force and effect notwithstanding the failure to indorse the $7.50 payment on the margin of the record.

On May 9, 1938, which was more than a month after the lien of the mortgage from Keith to Montgomery had apparently expired, as reflected by the mortgage record, Jimerson brought suit to have the mortgage declared barred by the statute of limitations and removed as a cloud upon his title. On June 3, 1938, Montgomery filed an answer, alleging the invalidity of the tax sale and the validity of his mortgage, and prayed its foreclosure.

Prior to the execution of the mortgage to Montgomery, Keith had given a mortgage on the same land to

Lutie M. Reed and Lillie B. Eshleman, who, on December 19, 1939, filed suit to foreclose their mortgage.

These cases were consolidated, and a decree was rendered in which the sale for taxes to the state was held invalid and that the mortgage to Montgomery was not barred, but that it was subject to the Reed and Eshleman mortgage. A sale of the land was ordered in satisfaction of these mortgages, and directions given for the distribution of the proceeds thereof, including the payment of the Reed and Eshleman mortgage, and the balance, or so much thereof as was necessary, to be then applied to the payment of the Montgomery mortgage which the court found then amounted, with interest, to $885. From this decree Jimerson only has appealed. He makes no objection to the decree except so much thereof as declared that the mortgage to Montgomery was a subsisting lien, the insistence being that it was barred by the statute of limitations.

It appears, from the numerous cases cited in the briefs of opposing counsel, that when a debt secured by a mortgage of record is apparently barred by the statute of limitations and no marginal indorsements of payments keeping the lien of the mortgage alive have been made upon the mortgage record, the mortgage becomes, as to third parties, in effect an unrecorded mortgage, and a third party may acquire title to the mortgaged land unaffected by the lien of the mortgage. The insistence for the reversal of the decree is that Jimerson is a third party and, therefore, unaffected by the mortgage lien. To sustain this contention the following cases are cited: *Beith* v. *McKenzie*, 191 Ark. 353, 86 S. W. 2d 176; *Johnson* v. *Lowman*, 193 Ark. 8, 97 S. W. 2d 86; *Hamburg Bank* v. *Zimmerman*, 196 Ark. 849, 120 S. W. 2d 380, and *Polster* v. *Langley*, 201 Ark. 396, 144 S. W. 2d 1063.

But an examination of those cases will disclose that in each of them the facts were that no payments which had been made had been indorsed upon the margin of the mortgage record.

Appellant cites the case of *Connelly* v. *Hoffman*, 184 Ark. 497, 42 S. W. 2d 985, in which a subsequent mort-

gage was taken at a time when the prior mortgage was not barred. It was there held that the taking of a mort- gage when there was a prior valid mortgage did not estop the subsequent mortgagee from pleading the statute of limitations against the prior mortgage. But appellant did not take a mortgage from Keith; he took a quitclaim deed.

The effect of the cases cited, and others on the subject, is that if one buys land upon which there is a mortgage apparently barred by the statute of limitations, through failure to indorse payments on the margin of the mortgage record, he is a third party as to the mortgage, and acquires title free from the mortgage lien. If one takes a second mortgage when the lien of the first mortgage is not barred, he may thereafter plead the statute of limitations against the first mortgage, when, through failure to indorse payments upon the margin of the record, the first mortgage becomes apparently barred. If one buys land upon which there is a mortgage not barred as shown by the mortgage record, he buys subject to the mortgage, and may not plead the statute of limitations if the debt was not, in fact, barred, having been kept alive by payments not entered upon the margin of the mortgage record.

The reason for the distinction which the cases make, while not altogether clear, is this: When one buys land which the record shows is under a valid mortgage, he buys only the equity of redemption. He takes no other or greater title than his grantor had, which is the right to redeem.

In Volume 2, Jones on Mortgages (8th Ed.), p. 1038, it is said: "A purchaser with actual notice of the mortgage, or constructive notice by means of a registry, can avail himself of the presumption of payment from lapse of time only when the mortgagor could avail himself of it under the same circumstances. The grantee succeeds to the estate and occupies the position of his grantor. He takes subject to the incumbrance; and his title and possession are no more adverse to the mortgagee than was the title and possession of the mortgagor. . . . A purchaser from the mortgagor stands in no

better position than the mortgagor himself as to gaining title by possession and lapse of time, if the mortgage be recorded. The record is notice of the mortgage to a subsequent purchaser; and the mere fact that he has had actual possession under his purchase for the statute period of limitation is no bar to a foreclosure of the mortgage.''

The text just quoted was quoted as authority for the decision in the case of *First State Bank* v. *Cook,* 192 Ark. 213, 90 S. W. 2d 510, in which the facts were as follows. On June 13, 1930, Cook purchased a 200-acre tract of land from McCabe who had previously mortgaged that tract and other lands to the bank to secure a note dated November 7, 1928, and due one year thereafter. No payments having been made by Cook on this note, the bank, on October 7, 1931, filed suit for judgment on this debt and for foreclosure of the mortgage given by McCabe to the bank. A decree of foreclosure was rendered April 15, 1935, and the lands ordered sold, and the bank became the purchaser at the sale under this decree. Cook who had not been made a party to the foreclosure suit intervened and objected to the confirmation of this sale upon the ground that he had acquired by purchase the 200-acre tract from McCabe and had taken immediate possession thereof, and pleading the statute of limitations against the bank's debt. The trial court sustained the intervention, and set aside the decree of foreclosure insofar as it related to the 200-acre tract. No notation of any payment to the bank had been made upon the margin of the record of the mortgage to the bank, and Cook invoked the provisions of §§ 7382 and 7408, Crawford & Moses' Digest (appearing as §§ 9436 and 9465, Pope's Digest). It was held, upon the authority of the text above quoted, that Cook could avail himself only of such defenses as his grantor, McCabe, had, and that, as McCabe could not avail himself of the plea of the statute of limitations, Cook could not do so.

We have here the same state of case. Keith could not have availed himself of the plea of the statute of limitations, nor can his grantee, Jimerson, do so. The court below so decreed, and that decree is affirmed.